Cause No. * 4·26cv125
JDK
KNM

**FILED**

FEB 0 3 2026

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

| | | |
|---|---|---|
| SHAWN OLALI, | ) | |
| | ) | IN THE UNITED STATES |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DISTRICT FOR THE |
| | ) | |
| PAUL JOHNSON IN OFFICIAL | ) | EASTERN DISTRICT |
| CAPACITY AS DISTRICT | ) | |
| ATTORNEY, | ) | OF TEXAS |
| | ) | |
| Defendant, | ) | |
| | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLATORY JUDGEMENT AND PRELIMINARY INJUCTIVE AND PERMANENT INJUCTIVE RELIEF

The plaintiff, Shawn Olali, files this complaint against defendant, Paul Johnson in his official capacity, and would respectfully show the court as follows:

## TABLE OF CONTENTS

INTRODUCTION ........................................................... 3

JURY DEMAND ........................................................... 4

THE PARTIES ........................................................... 4

JURISDICTION ........................................................... 5

VENUE ........................................................... 6

FACTUAL BACKGROUND ........................................................... 6

CAUSES OF ACTION ........................................................... 8

IRREPARABLE INJURY ........................................................... 18

RELIEF SOUGHT ........................................................... 22

PRAYER ........................................................... 26

## TABLE OF AUTHORITIES

<u>Cases</u>

Brady v. Maryland, 373 U.S. 83 (1963) ............................................................... 13

Chambers v. Mississippi, 410 U.S. 284 (1973) ............................................. 15, 24

Elrod v. Burns, 427 U.S. 347 (1976) ................................................................... 19

Ex parte Young, 209 U.S. 123 (1908) ............................................................. 5, 24

Faretta v. California, 422 U.S. 806 (1975) .......................................................... 11

Fuentes v. Shevin, 407 U.S. 67 (1972) ................................................................ 14

Geders v. United States, 425 U.S. 80 (1976) ...................................................... 12

Griffin v. Illinois, 351 U.S. 12 (1956) ................................................................. 17

Mathews v. Eldridge, 424 U.S. 319 (1976) ......................................................... 14

Mitchum v. Foster, 407 U.S. 225 (1972) ......................................................... 6, 23

Simmons v. United States, 390 U.S. 377 (1968) .................................................. 11

Steffel v. Thompson, 415 U.S. 452 (1974) ........................................................... 25

Washington v. Texas, 388 U.S. 14 (1967) .............................................. 11, 15, 25

Younger v. Harris, 401 U.S. 37 (1971) ................................................................ 19

Federal Statutes And Rules

28 U.S.C. § 124(c)(3) (Eastern District of Texas divisions) ................................. 6

28 U.S.C. § 1331 (Federal question) ..................................................................... 5

28 U.S.C. § 1343 (Civil rights jurisdiction) .......................................................... 5

28 U.S.C. § 1391(b) (Venue) ................................................................................. 6

28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act) ......................................... 5

28 U.S.C. § 2283 (Anti-Injunction Act) ................................................................ 5

42 U.S.C. § 1983 (Civil action for deprivation of rights) ......................... 3, 5, 23

Fed. R. Civ. P. 38 (Jury trial demand) .................................................................. 4

Fed. R. Civ. P. 39 (Trial by jury or by the court) ................................................. 4

United States Constitution

U.S. Const. amend. I (Petition Clause) ........................................................... 14, 19

U.S. Const. amend. VI .............................................. 3, 4, 10-13, 18, 25, 26

U.S. Const. amend. VII ............................................................................................ 3

U.S. Const. amend. XIV .......................... 3, 4, 11, 13, 15, 16, 18, 24–26

Texas Statutes

Tex. Code Crim. Proc. art. 39.14(d) (Pro se inspection-only) ...................... 3–6, 8, 11–19, 23–26

Tex. Code Crim. Proc. art. 39.14(e) (Nondisclosure) ................................................. 3, 8

Tex. Code Crim. Proc. art. 39.14(f) (Defense counsel disclosure limits) ................... 3, 4, 8, 23, 26

Tex. Code Crim. Proc. art. 39.14 (Discovery; Michael Morton Act) ................ 3–8, 11–19, 23–26


Texas Constitution

Tex. Const. art. I, § 10 ............................................................................................... 3

Tex. Const. art. I, § 13 ............................................................................................... 3

---

## I.  INTRODUCTION

1. Plaintiff brings this civil action under 42 U.S.C. § 1983 for a declaratory judgment that Article 39.14(d) of the Texas Code of Criminal Procedure is unconstitutional on its face and as applied, and for injunctive relief barring its enforcement.

2. Article 39.14(d) allows pro se criminal defendants only an in-person inspection of discovery materials. As applied, this provision prohibits a pro se accused from disclosing or presenting or entering into the record evidence disclosed by the prosecution – even evidence of an exculpatory nature – at hearings or trial.

3. Plaintiff alleges that this statute's restrictions violate his rights under the U.S. Constitution – including the Sixth Amendment right to self-representation and to present a defense, and the Fourteenth Amendment rights to due process and equal protection – by effectively denying a pro se defendant the ability to use evidence in his defense.

4. Plaintiff seeks emergency and permanent relief to prevent irreparable harm. Plaintiff is to stand trial on February 26, 2026. This Court's intervention is warranted under the factual circumstances to vindicate federally protected rights that cannot be otherwise preserved.

5. Plaintiff respectfully requests that the Court declare Article 39.14(d) (and 39.14(f) to the extent it applies to a pro se defendant) unconstitutional and enjoin Defendant from enforcing it against him.

## II.    JURY DEMAND

6. The plaintiff demands a trial by jury on all issues so triable, pursuant to the Seventh Amendment and Fed. R. Civ. P. 38 and 39. The Plaintiff asserts that this jury demand is served within the time prescribed by Fed. R. Civ. P. 38.

7. While Plaintiff acknowledges that the core issues in this action and the relief sought are legal and equitable in nature and thus not subject to be decided by a jury – the constitutionality of a statute and requests for equitable relief – this jury demand is made to preserve any right to have a jury hear factual issues or to assess any damages or mixed questions that might arise.

## III.    THE PARTIES

8. Plaintiff, Shawn Olali (hereinafter "Plaintiff"), who is presumed innocent under due process, is an individual facing criminal prosecution in Denton County, Texas. The plaintiff resides in the city of Allen in Collin County, Texas 75013. Plaintiff is currently proceeding pro se (without counsel) in that state prosecution. Because of Article 39.14(d), Plaintiff has effectively been denied discovery materials. Plaintiff brings this action to vindicate his constitutional rights and enjoin an unconstitutional law.

4

9. Defendant, Paul Johnson (hereinafter "Defendant"), is the District Attorney for Denton County, Texas, sued in his official capacity. As the chief prosecuting officer in Denton County, Defendant is responsible for enforcement of Texas criminal laws and his office's policies, including the provisions of the Texas Code of Criminal Procedure at issue. Defendant's office is presently prosecuting Plaintiff's criminal case and has invoked Article 39.14(d) to restrict Plaintiff's meaningful access to discovery. Defendant Johnson's official office is located at the address of 1450 E. McKinney St., Denton, Texas 76209. Because this suit seeks only injunctive and declaratory relief against Defendant in his official capacity to stop enforcement of an unconstitutional statute, it is authorized by Ex parte Young, 209 U.S. 123 (1908), and is not barred by sovereign immunity.

### IV.    JURISDICTION

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights and elective franchise) because Plaintiff's claims arise under the U.S. Constitution and federal law (42 U.S.C. § 1983) (civil action for deprivation of rights). Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201–2202 (declaratory judgment act) and injunctive relief to prevent the violation of constitutional rights. To the extent an ongoing state prosecution exists, this case presents circumstances where the threatened irreparable injury to Plaintiff's federally protected rights is both sufficient to warrant federal equitable intervention. Furthermore, 42 U.S.C. § 1983 is an Act of Congress that expressly authorizes this Court to issue injunctions against state officials notwithstanding the Anti-Injunction Act, 28 U.S.C. § 2283 (see Mitchum v. Foster, 407 U.S. 225, 242 (1972)). No abstention doctrine precludes jurisdiction here because, as detailed below, Plaintiff has no adequate remedy in the state proceedings to prevent

the imminent violation of his constitutional rights, and Article 39.14(d) is flagrantly and patently unconstitutional in restricting core trial rights.

## V.    VENUE

11. Venue is proper in the Sherman Division of the Eastern District of Texas under 28 U.S.C. § 1391(b) (venue generally) and 28 U.S.C. § 124(c)(3) (Texas) because the events giving rise to the claim are occurring in Denton County, Texas, which lies within this judicial district. The Defendant, Paul Johnson in his official capacity, and his office resides in and conducts his duties out of Denton County which is in this judicial district.

## VI.    FACTUAL BACKGROUND

12. On the day of the investigation, it appears that a patrol officer approached the complainant to seek confirmation of the complainant's initial witness account. Having appeared to hear said witness testimony the officer states that the initial testimony is consistent with evidence. The officer appears to communicate that the witness's testimony does not provide cause to arrest or prosecute. It appears that the officer states "that is what he wants" then proffers an alternative and then proceeds to effectuate an arrest conditioned upon whether or if the complainant chose to change their initial witness account where the officer appears to gesture what occurred [sequential: an initiated action that causes a response to occur] and states "that's what he wants" and the officer appears, upon belief, to coerce or coach or attempt to convince the complainant to change their story while giving the complainant a chance to change their witness account to the officer's "suggested" version as the officer effectuates the arrest. The complainant then pulls away from the officer and thereafter alters their testimony.

13. The investigator spoke with the officer and they devised a story that did not appear in the exhibits but was presented in the affidavit which he admitted, at the hearing, contained explicit

testimony that was not found in the evidence that was exhibited at the hearing nor did it occur during any interaction. The investigator presented the affidavit with information he deemed as not having occurred during the interaction based on the exhibits. The investigator admitted that the Plaintiff was never provided with any information regarding the incident upon request at any time during the interaction and that the plaintiff never actually provided any "useful" information (identifying or otherwise) as shown in the exhibits nor was this information explicitly acknowledged contrary to what was written in the affidavit.

14. The defendant, through his office, approached the complainant on July 7 2025 to assert prosecution or arrest against the complainant on the basis that any adversely stated account as alleged is subject to prosecution and it is shown from the notes provided in evidence that it is apparent that the initial affidavit contains information that is false and contrary thereto said notes.

15. The defendant through his office, Denton County District Attorney's Office, has initiated adversarial action against the plaintiff, who is presumed innocent, in a pending case in a Denton County Statutory Court. At the evidentiary hearings and the upcoming trial, The defendant, through his office, asserts that Texas statute 39.14 does not allow a judge to compel disclosure or entry of evidence into the record and that 39.14 does not allow any person that has seen or obtained discovery to disclose any information including it's existence to the court and that any person that has obtained such discovery cannot introduce it into evidence (incl. former counsel) at a hearing or trial. The defendant, through his office per policy, asserts that such persons sign a mandatory agreement that allows the state to take effective action against any person that does so including current or former counsel even if they have exculpatory evidence that is in dispute and that the defendant, who is pro se, has no right to enter evidence into the record pursuant to 39.14 unless

7

the prosecutor of his own choice and fruition enters the evidence into the record and therefore the pro se defendant cannot exhibit evidence, including exculpatory evidence, at a hearing or at trial.

## VII.   CAUSES OF ACTION

16. After Plaintiff's former defense counsel withdrew, counsel's case file – including copies of discovery received from the State – could not be transferred to Plaintiff because Article 39.14(f) prohibition on disclosure. As a result, once Plaintiff chose to proceed without an attorney, he effectively lost any access to the evidence that had been disclosed. The State has refused to provide Plaintiff with documents, videos, or other evidence in the original documents in the attorney's file, citing Article 39.14(d) instead replacing them with another evidence file that is improperly titled through the state's own admission.

17. Critically, Plaintiff cannot effectively use any of the State's disclosed evidence in preparing motions or in presenting his defense at trial. For example, Plaintiff cannot enter, disclose, mark or copy exhibits from the State's file to introduce as evidence during trial, nor can he show or describe those materials to witnesses in preparation for testimony, without violating the non-disclosure rules of Article 39.14(e). If Plaintiff were to attempt to submit a document from discovery into the court record (for instance, as an attachment to a motion or as an exhibit during a pretrial hearing), he would run afoul of the statute's prohibition on disclosing discovery materials to "third parties" (which would include the court or jury) . In effect, Article 39.14(d), (e), and (f) have walled off all evidentiary material in the State's possession: Plaintiff can neither obtain copies for his own review nor share the contents with anyone else – even as part of court proceedings – unless the prosecution itself chooses to introduce that material at a hearing or at trial. This includes even plainly exculpatory evidence or impeachment material that could exonerate or assist Plaintiff's defense.

18. The pro se litigant may only view any evidence under supervision by the prosecutor.

19. Plaintiff has no recourse within the Texas courts. An appeal of a conviction is not an adequate or effective remedy: Plaintiff is facing imminent harm and will suffer irreparable harm if he proceeds under the current setting without judicial intervention. the normal course of raising constitutional claims in defense of the criminal case will not protect Plaintiff's rights. He now turns to this Court to vindicate those rights and prevent a irremediable and ongoing constitutional violation before it occurs.

## STATE COURTS REMEDIES ARE UNAVAILABLE AND INEFFECTIVE

20. Plaintiff alleges that state-court remedies are ineffective and unavailable in practice. Even if the challenged enforcement could be litigated through motions in the trial court, a favorable ruling—or relief obtained only after trial—would not restore the defendants constitutional rights.

21. In fact, the Plaintiff has raised these issues through motions and requests in the state trial court and received favorable discovery enforcement rulings and admonishments against the defendant, however, the Plaintiff alleges that these efforts have not produced timely relief capable of preventing the injury described. Texas trial courts are unable to provide relief and have indicated that they lack jurisdictional power to override the statute's limitations or intervene.

22. Plaintiff has attempted to obtain meaningful relief through the state trial court by filing discovery motions and related requests, including motions to compel, oral admonishments, sanctions, and by seeking enforcement of the State's disclosure obligations. Although the trial court has granted most admonishments, discovery enforcement motions, the challenged restriction continues to be invoked and enforced to prevent Plaintiff from accessing and using discovery in a way necessary to prepare and present a defense. A writ of mandamus is generally jurisdictionally

unavailable in the current circumstances for the matters at hand given the unconstitutional law at bar (sought but unavailable).

23. The defendant admits that, contrary to court order, the list of disclosed evidence does not consist of the original video or audio that was submitted to former counsel. The defendant admits that the subject of the judicial orders are not the subject of the defendant and his office's discovery inquiry despite order of the court. The defendant, through his office, admits they have provided only video/audio evidence that was not procured to former counsel and the evidence appears improperly titled.

24. Plaintiff further alleges that on appeal, as a pro se defendant, he restricted in his ability to adequately complete an appeal process in accordance with jurisdictional time constraints while detained due to post-detainment processing and faces substantial practical impediments that render state review functionally unavailable as a timely remedy. The county jail does not provide the detainees the resources to do so (paper, pen, mailing, (contraband)) especially during post-processing as he is unable to afford an appeal bond. These impediments include no access to resources and materials, limited (to, at times, none) ability to prepare and file pleadings within jurisdictional timelines, and limited ability to litigate emergency review in a manner that can prevent the impending deprivation before trial.

25. The Plaintiff is not asking this Court to determine guilt or innocence, to resolve contested facts bearing on the merits of the criminal charge, or to supervise the state trial. Plaintiff seeks only to prevent the imminent enforcement of a statutory restriction and state office policy that, as applied, violates a defendant's constitutional protections.

## COUNT I – VIOLATION OF THE SIXTH AMENDMENT: RIGHT TO SELF-REPRESENTATION, TO PRESENT A DEFENSE, TO CONFRONTATION AND TO COUNSEL

26. Plaintiff incorporates by reference all preceding paragraphs. Defendant's enforcement of Article 39.14(d) against Plaintiff deprives him of rights secured by the Sixth Amendment, as applied to the States via the Fourteenth Amendment. The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right… to have the Assistance of Counsel for his defense." It also guarantees the accused the option to represent himself pro se, a right the Supreme Court recognized in Faretta v. California, 422 U.S. 806 (1975). Plaintiff has chosen to exercise his right to self-representation; thus, he stands "in the shoes" of defense counsel and is entitled to engage in the core defense functions of preparing and presenting his case. By denying Plaintiff access to the materials necessary to perform those functions, Article 39.14(d) imposes an unconstitutional condition on the Sixth Amendment right of self-representation. In practical effect, the State is saying: if you waive your right to counsel and go pro se, you must waive any right to possess and use discovery evidence in court proceedings. This forces a pro se defendant into an impossible dilemma and directly undermines the Faretta right. The Supreme Court has long held that the government may not condition one constitutional right on the forfeiture of another. See Simmons v. United States, 390 U.S. 377, 394 (1968) (a defendant cannot be forced to surrender one constitutional right to assert another). Article 39.14(d) penalizes the choice to proceed without counsel by withholding a right that is granted to those who have attorneys (namely, the right to have copies of evidence through counsel). It thus chills and burdens the right to self-representation, effectively making it untenable in any case where discovery is important (which is every criminal case).

27. Furthermore, the Sixth Amendment encompasses the right to present a defense and to confront the prosecution's case with one's own evidence and witnesses. Even when a defendant has counsel, the defendant retains "the right to present his own witnesses to establish a defense," which is "a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). By preventing Plaintiff from introducing evidence in his favor (since he cannot lawfully possess or disclose it), Article 39.14(d) directly contravenes this right. A pro se accused, no less than one represented by an attorney, must be able to put on evidence and not merely rely on cross-examining the State's witnesses. The Compulsory Process and Confrontation Clauses, as well as the overall structure of the Sixth Amendment, guarantee an accused the tools to present his version of the facts to the jury. Plaintiff's "version of the facts" cannot be effectively presented if he is barred from using the very documents, recordings, and tangible items that contain those facts.

28. Article 39.14(d) also interferes with the assistance of standby counsel or any consulting counsel. Although Plaintiff is pro se, the Sixth Amendment still protects the "free-flowing attorney-client communication" between an accused and any legal advisors assisting him. By law, a standby or consulting attorney (if one exists) is bound by the same rule which means the attorney cannot share the discovery material for the defendant's independent review. The Texas Court of Criminal Appeals itself noted that limitations on communications between defense counsel and a defendant "often run afoul of the Sixth Amendment", citing Geders v. United States, 425 U.S. 80 (1976). In Geders, the U.S. Supreme Court held that a trial court's order barring a defendant from consulting his lawyer during a 17-hour overnight recess violated the Sixth Amendment right to assistance of counsel, because it impeded discussion of the day's testimony and planning of strategy (id. at 91-92). Here, the State, via Article 39.14, has effectively barred Plaintiff from consulting anyone – whether a lawyer, investigator, or other – about the details of evidence,

because he isn't allowed to have the evidence in the first place. The statute's gag rule (subsection (e)) further ensues unconstitutional limits. This is a severe infringement on the functional assistance of counsel and the Defendant's ability to prepare a defense "by himself or counsel, or both" (Texas Const. art. I, §10; U.S. Const. amend. VI). In sum, Article 39.14(d) violates the Sixth Amendment by handicapping the pro se defendant's defense preparation and presentation, and by burdening the choice to proceed without counsel.

## COUNT II – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS (FAIR TRIAL AND RIGHT TO BE HEARD)

29. Plaintiff incorporates all prior paragraphs. The Due Process Clause of the Fourteenth Amendment guarantees an accused the fundamental right to a fair trial. This includes the rights to notice of the evidence to be used against him, the opportunity to be heard in a meaningful manner, and the right to present a complete defense. By enforcing Article 39.14(d) to deny Plaintiff the ability to fully access and use evidence, Defendant is violating Plaintiff's due process rights. Due process is not satisfied by the State simply possessing exculpatory or material evidence and perhaps showing it briefly; due process requires that the defense be able to use such evidence to advocate for itself. As the U.S. Supreme Court held in Brady v. Maryland, "suppression by the prosecution of evidence favorable to an accused… violates due process where the evidence is material either to guilt or punishment" (373 U.S. 83, 87 (1963)). The Brady rule underscores that a fair trial necessitates the accused actually obtaining favorable evidence in time to put it to effective use. In Plaintiff's case, even if the prosecution nominally "disclosed" Brady material by allowing a brief inspection, the restrictions of Article 39.14(d) amount to a constructive suppression: Plaintiff cannot retain the evidence or effectively make use of it, which defeats the purpose of disclosure. Indeed, the obligation to disclose exculpatory evidence is considered "a

quantum leap in the rights of criminal defendants under the Due Process Clause", precisely because without meaningful disclosure and use, innocent defendants may be wrongfully convicted. If Article 39.14(d) prevents a pro se defendant from deploying exculpatory proof at trial, it squarely conflicts with the Brady due process principle.

30. More generally, due process guarantees the opportunity to be heard "at a meaningful time and in a meaningful manner" (Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). A criminal trial where the defendant cannot meaningfully challenge the prosecution's evidence or present his own evidence is fundamentally unfair. "Fundamental to the concept of due process is the right to be heard." Fuentes v. Shevin, 407 U.S. 67, 80 (1972). The "right to be heard" is not merely the right to speak words in court – it encompasses the right to put forward evidence and arguments on one's own behalf. Under Article 39.14(d), Plaintiff's "right to be heard" is illusory; he can speak, but he cannot show – he cannot back up his arguments with documentation, cannot introduce physical proof, and thus cannot truly be heard in a way that permits the court or jury to fully consider his defense.

31. Additionally, the statute creates a one-sided evidentiary regime that violates the basic due process principle of fairness in an adversarial proceeding. It grants the State an "unchecked, absolute discretion" over discovery materials, while the defendant and even the trial court are left powerless to require sharing those materials on equal terms. As observed in the mandamus proceedings related to this issue, *"the State has unchecked, absolute discretion enjoyed by neither the defendant nor the trial court"*. The prosecutor can freely decide to give copies of evidence to anyone – even "to strangers on the street" – without violating the law, yet a defendant cannot obtain the same evidence for himself. This asymmetry offends the "open courts" principle (articulated in Texas Constitution art. I §13 and reflected in federal due process). All courts shall

be open, and every person for an injury done him shall have remedy by due course of law – but Article 39.14(d) effectively closes the court's doors to evidence the defendant needs for his remedy. The U.S. Constitution's First Amendment Petition Clause likewise protects the right of individuals to access the courts and present their grievances; a law that blocks a criminal defendant from effectively petitioning the court (through presentation of evidence and arguments) strikes at this right.

32. By preventing Plaintiff from introducing evidence in his defense, Article 39.14(d) also mirrors the type of arbitrary evidentiary bar struck down in Washington v. Texas, 388 U.S. 14 (1967). In Washington, the Supreme Court invalidated a state statute that barred a certain class of defense witnesses (accomplices) from testifying, because it arbitrarily denied the defendant the opportunity to present relevant evidence. The Court declared that "the right to present a defense" – to offer witnesses and evidence – is essential to due process. Article 39.14(d) is similarly arbitrary and pernicious: it bars an entire category of evidence (all materials obtained from the State's discovery) from being presented by the defendant, unless the State consents. Such a sweeping prohibition cannot coexist with the due process requirement that a defendant be entitled to present competent, relevant evidence in his favor (see, e.g., Chambers v. Mississippi, 410 U.S. 284, 302 (1973) (defendant's due process rights violated by state's mechanistic application of evidentiary rule to exclude reliable defense evidence)). While a state may impose reasonable restrictions on the handling of sensitive discovery (to protect victims, etc.), a blanket ban on a defendant ever possessing or copying any evidence, even for use in court, goes too far. It is not narrowly tailored to any compelling interest – especially considering that attorneys are allowed copies and are bound by ethical rules to use them properly. The only distinction here is the status of the accused as pro se, which is unrelated to the nature of the evidence itself. Thus, Article 39.14(d) fails any level of

scrutiny: it is an arbitrary procedural barrier that significantly infringes on the fundamental right to a fair opportunity to defend against the State's accusations.

## COUNT III – VIOLATION OF FOURTEENTH AMENDMENT EQUAL PROTECTION

33. Plaintiff incorporates all prior paragraphs. Although styled as a discovery rule, Article 39.14(d) creates two classes of criminal defendants and treats them markedly differently: (1) defendants who have counsel, and (2) defendants who are pro se. The former are provided discovery materials that their attorneys may freely copy, retain, and review (subject only to limited restrictions on disclosure to third parties), whereas the latter are denied the right to obtain or keep copies of the same materials. This disparate treatment burdens fundamental rights (the trial rights discussed above) and is not justified by any legitimate, substantial state interest as applied to pro se defendants. It therefore violates the Equal Protection Clause of the Fourteenth Amendment.

34. The classification at issue – represented vs. pro se defendants – is not based on suspect traits like race or religion, but it directly impacts the ability to exercise fundamental rights at trial. When a state law discriminates with respect to a fundamental right, it triggers strict (or at least heightened) scrutiny. Here, the fundamental right is the right to a fair trial and to defend oneself. By conditioning full discovery access on the choice of representation, the State is effectively punishing those who exercise the right to self-representation, and rewarding those who waive that right in favor of counsel. There is no rational basis, let alone a compelling interest, for this disparity. The usual rationale given for 39.14(d) is concern that a pro se defendant might misuse or disseminate sensitive information (e.g., witness addresses or disturbing images) if given copies. But this concern is already addressed by other parts of Article 39.14, which allow courts to protect sensitive information and require redaction of identifiers. Less drastic measures – such as

16

protective orders tailored to specific items or requiring supervision – could serve the same purpose. An across-the-board ban on giving pro se defendants any discovery is grossly overinclusive and underinclusive: it denies even access to innocuous or exculpatory material that poses no security risk, while a determined defendant inclined to misuse information could still do so after merely inspecting it (by memorizing or notes). At the same time, nothing stops a represented defendant's attorney from accidentally leaking information or misusing it – but the law chooses to trust one class and not the other without individualized findings.

35. The consequences of this distinction are profound. A represented indigent defendant receives the "benefit" of their attorney having an open file with the State's evidence (and Texas law now generally mandates open-file discovery, a reform intended to level the playing field). A similarly situated indigent defendant who has, for example, exercised his constitutional right to fire an ineffective lawyer and proceed pro se, is relegated to second-class status, with essentially closed-file discovery. The Supreme Court has condemned trial systems that discriminate based on wealth or other arbitrary factors when those systems affect the fairness of criminal proceedings. "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." Griffin v. Illinois, 351 U.S. 12, 19 (1956). In Griffin, the issue was access to trial transcripts for appeal – indigent defendants could not afford transcripts and thus effectively lost their appellate rights, which the Court found violative of equal protection/due process. The principle applies in analogous fashion: There can be no equal justice where the kind of trial a man gets depends on whether he has an attorney. A pro se defendant under Article 39.14(d) will not have an equal or adequate opportunity to defend himself compared to a defendant with counsel. The law's discrimination exacerbates other inequalities: for instance, Plaintiff's pro se status is partly a function of his indigency or dissatisfaction with appointed counsel, and now he faces trial

17

without the essential resources counsel would have had. This double burden on indigent pro se defendants cannot withstand constitutional scrutiny.

36. Even under rational-based review (if a court deemed no fundamental right was implicated, which Plaintiff contests), Article 39.14(d) fails because its means-to-ends fit is irrational. Texas's stated interest in its discovery rules (via the Michael Morton Act) was to increase fairness and prevent wrongful convictions by ensuring defendants have access to evidence (the Act was passed after gross prosecutorial misconduct came to light, including withholding evidence that led to an innocent man, Michael Morton, being wrongfully imprisoned for 25 years). It would be perverse if the very statute designed to open discovery is interpreted to deny discovery to the subset of defendants who lack formal representation. Nothing in legislative history suggests pro se defendants were meant to be prejudiced; to the contrary, the policy was "to open up, not close off, discovery". Thus, treating pro se accused differently undermines the Act's purpose. A rational legislature would not deliberately sabotage fair trials for pro se defendants – the current effect is likely an unintended consequence, which does not save it from constitutional infirmity. Equal protection demands that the State have a logical reason for differential treatment. Here, whatever administrative or theoretical reasons might be offered (such as preserving evidence integrity or encouraging representation) cannot justify denying basic trial fairness. Encouraging defendants to use attorneys is not a valid excuse to strip rights from those who don't; the choice of self-representation is itself constitutionally protected.

## VIII.  IRREPARABLE INJURY

37. Specifically, Plaintiff's Sixth Amendment right to defend himself (including the right to present evidence and to proceed pro se) and Fourteenth Amendment right to a fair trial will be irreversibly compromised at that trial. This harm is per se irreparable: courts recognize that even

a temporary deprivation of constitutional rights constitutes irreparable injury (see Elrod v. Burns, 427 U.S. 347, 373 (1976) (loss of First Amendment freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury")).

38. Each day of unconstitutional restraint is irretrievable. Indeed, the Ninth Circuit has observed that a "complete loss of liberty" during pretrial detention is "irretrievable" regardless of the outcome of trial, and the same principle applies to time spent incarcerated due to an arrest or conviction obtained through an unconstitutional process.

39. In these circumstances, timely preservation and use of the evidence materials and prior witness accounts is the sacrosanct. If the Plaintiff is denied the practical ability to preserve and use those materials before trial, the resulting losses cannot be meaningfully cured after the fact.

40. The danger to Plaintiff's federally protected rights is substantial. Unlike a typical defendant, Plaintiff cannot simply defend himself in the state trial and later raise any errors on appeal – the very structure of Article 39.14(d) disables him from mounting an effective defense in any subsequent prosecution. The highest Texas court has already ruled that a pro se accused may only view them under supervision. In other words, state law deliberately withholds from pro se defendants the usual tools needed to use evidence at trial. There is no action Plaintiff can take in his criminal case to alter this imbalance; the trial court is bound by the statute and by the Court of Criminal Appeals' interpretation of it. Thus, the threat to Plaintiff's rights cannot be cured within the state proceeding itself. As the Supreme Court recognized in Younger v. Harris, federal intervention is justified when a statute's enforcement threatens "irreparable loss" of constitutional rights that is "both great and immediate," and when the normal defense of the state prosecution is no remedy because the harm will occur regardless. Article 39.14(d) operates as a structural barrier

to a fair trial, making federal relief "absolutely necessary for protection of Plaintiff's constitutional rights".

## DEFENDANT'S APPARENT INTIMIDATION BY THREAT OF UNLAWFUL ARREST OR PROSECUTION OF A WITNESSES OR THIRD PARTY

41. It appears, based upon belief, that the state prosecution is engaged in witness tampering or intimidation. On at least two occasions, the state has contacted the witness upon the discovery information and coached or coerced testimony under threat of unlawful arrest or prosecution.

42. The first instance occurred on the day of the investigation, it appears that a patrol officer approached the complainant to seek confirmation of the complainant's initial witness account. Having appeared to hear said witness testimony the officer states that the initial testimony is consistent with evidence. It appears that the officer states that the testimony does not provide cause for arrest or prosecution and "that is what he wants". The officer then proceeds to effectuate an arrest conditioned upon whether or if the complainant chooses to alter their initial witness account where the officer appears to gesture what occurred [sequential: initial action then a response occurs] based on witness testimony and states "that's what he wants" and the officer appears, upon belief, to coerce or coach or attempt to convince the complainant to change their story while giving the complainant a chance to change their witness account to the officer's "suggested" version as the officer effectuates the arrest. The complainant then pulls away and thereafter alters their testimony.

43. The second instance, based on the notes of conversation in discovery, occurred on July 7, 2025 where it appears that the defendant, through his office, contacted the complainant and it appears that the notes present that the complainant has provided favorable information contrary to prior testimony and the affidavit. The note contains statements that are contrary to and have not

appeared at any time prior and it appears in the notes that the complainant is subject to adverse legal action (ie: arrest or prosecution). It is also known of the defendant's issuance of subpoena to compel such witness testimony that has been substantially changed or altered under threat.

44. It appears that, based on information and belief, the defendant, through his office, has engaged in coaching or coercing of witnesses to procure testimony markedly different from the initial testimony and the affidavit upon the premise of threat of unlawful arrest or prosecution.

## DEFENDANT ADMITS WILLFUL ADMISSION OF FALSE TESTIMONY IN THE AFFIDAVIT

45. The defendant, through his office, admit that a critical portion of testimony in the affidavit was false and not actually contained in the video or any interaction. The investigator and his office admit that nowhere in the exhibits or interaction does it appear that the defendant represented by name or otherwise the individual complainant in question contrary to the affidavit. The investigator and the defendant admit that, upon request by the defendant, no identifying information was provided to the defendant of the incident or the individual in question nor affirmed contrary to the affidavit. The investigator and defendant admit that statements found within the affidavit do not appear in the exhibits or in any interaction with the defendant and that the defendant's testimony was not "useful". The defendant admits that it did not appear in the exhibits presented that at any point the officer appears to feel for an injury contrary to the affidavit.

46. Further, it appears that the defendant will also admit from notes taken on July 7, 2025 from the witness that the affidavit contains information that is false. Contrary to the affidavit, no person at any time balled up their hand or made a fist motion at any time according to the witness.

47. It also appears, based upon belief, that video provided to former counsel through discovery, which former counsel has in their possession, shows that the complainant stated,

21

initially, that at no time was a fist motion used or did any person ball up their hand. It also shows that this information as well as other false information was known to officer, investigator, (and later to the defendant) at the time the affidavit was written. It appears that the officer/investigator approaches and coerces the complainant to falsify testimony and threatens unlawful arrest or prosecution premised on if the complainant does not provide likely false testimony (ie: "that is what he wants").

## DESTRUCTION AND CONCEALMENT OF EVIDENCE IN POSSESSION OF FORMER COUNSEL

48. The defendant, through his office, has sought to have evidence in possession of former counsel destroyed or concealed. Contrary to law and the state's court order, the defendant has removed the evidence provided to former counsel and the defendant has presented the plaintiff with evidence that was not provided to former counsel and is improperly titled.

49. Former counsel is the only individual that is believed to have retained copies of any evidence that he has received during discovery. The plaintiff does believe that counsel has retained said copies of evidence as described above.

50. The defendant has sought orders seeking to expunge exculpatory evidence in his possession since he is no longer former counsel and as a result this evidence will be permanently lost.

## PERMANENT IRREMEDIABLE INABILITY TO LATER SEEK RELIEF IN THIS COURT OR IN A STATE COURT TO SEEK REDRESS INJURY

51. The defendant, through his office, actions prevent the Plaintiff from seeking relief in this court or relief in state court in order to seek justice. Without relief, if such irreparable harm is allowed to occur, the Plaintiff will lose any ability to sustain an action in this court due to the

22

State's alleged conduct. Permanent loss and withholding of crucial evidence would be the penultimate of irreparable harm and would permanently foreclose the ability to seek redress.

## IX. RELIEF SOUGHT

52. Plaintiff has no adequate remedy at law or in the state courts to prevent this imminent violation of his rights. Indeed, the state trial court has indicated it lacks power to override the statute's limitations, and Texas courts have enforced Article 39.14(d) to deny pro se defendants possession of discovery materials. Waiting for a conviction and appeal is not an effective remedy: Plaintiff cannot afford an appeal bond and, while incarcerated, he lacks meaningful access to basic resources and is restricted in ability to meet judicial time constraints. Because the injury to Plaintiff's fundamental rights is immediate and cannot be undone, this Court's equitable intervention is warranted to prevent irreparable harm.

### INJUNCTIVE RELIEF

53. Plaintiff seeks both preliminary and permanent injunctive relief to halt the enforcement of the unconstitutional provision and thereby protect his rights. In particular, Plaintiff requests an immediate preliminary injunction (and subsequently a permanent injunction) prohibiting Defendant, in his official capacity as Denton County District Attorney, from enforcing Article 39.14(d) (and 39.14(f) to the extent it unconstitutionally applies to pro se defendant) against Plaintiff. This includes enjoining Defendant from refusing to disclose or withholding of material evidence based on Article 39.14(d), and from preventing Plaintiff from using, possessing, or presenting evidence at hearings or trial any evidence previously disclosed by the State. Such relief would ensure that Plaintiff is not unconstitutionally denied of his rights.

54. Granting an injunction is appropriate. Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate federal rights, and an injunction against the enforcement of a state statute by a

state official is an available remedy in such cases "notwithstanding the Anti-Injunction Act" (Mitchum v. Foster, 407 U.S. 225, 242 (1972) (42 U.S.C. § 1983 expressly authorizes federal injunctive relief against state action)). Defendant is a state county official responsible for enforcing the challenged law, so he is a proper party to enjoin under Ex parte Young, 209 U.S. 123 (1908) (allowing suits for injunctive relief against state officers acting unconstitutionally). Enjoining Article 39.14(d)'s enforcement will impose no undue harm on Defendant or the State – it will merely require the State to afford Plaintiff the same access to evidence that any represented defendant would have, preserving the status quo of constitutional compliance during litigation. The balance of equities and the public interest strongly favor an injunction, as the public has no legitimate interest in the enforcement of an unconstitutional law that undermines the fairness of criminal proceedings. Indeed, "few rights are more fundamental than that of an accused to present witnesses in his own defense" (Chambers v. Mississippi, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.")), and the public interest is served by ensuring that innocent persons are not wrongfully convicted due to arbitrary evidentiary restrictions. Plaintiff therefore asks this Court to issue preliminary injunctive relief without delay, and upon final judgment to issue a permanent injunction forbidding Defendant from enforcing Article 39.14(d) against Plaintiff going forward. This relief is necessary to prevent irreparable harm and to protect Plaintiff's constitutional rights to a fair trial, to compulsory process, and to represent himself.

## **DECLATORY JUDGMENT**

55. Plaintiff additionally seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201–2202, that Article 39.14(d) is unconstitutional both on its face and as applied to Plaintiff's circumstances. A declaratory judgment will serve to formally vindicate Plaintiff's rights and guide

24

the parties' conduct by clarifying the law. Specifically, Plaintiff asks this Court to declare that Article 39.14(d) of the Texas Code of Criminal Procedure is void and unenforceable because it violates the Sixth and Fourteenth Amendments to the United States Constitution. As alleged in the complaint, Article 39.14(d) imposes a unique disability on pro se defendants: it denies them of any meaningful use of discovery materials, even exculpatory evidence, solely because they have exercised their constitutional right to self-representation. This restriction effectively forces pro se accused persons to go to trial while undermining their right to present a complete defense. The statute's pro se limitation cannot be reconciled with the Constitution's guarantee that an accused has the right to present evidence and witnesses in his defense. The Supreme Court has recognized that "the right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense" – a right that is "a fundamental element of due process of law." (Washington v. Texas, 388 U.S. 14, 19 (1967)). By depriving pro se defendants of the ability to effectively use evidence (even evidence the State is required to disclose), Article 39.14(d) runs afoul of the Sixth Amendment right to present a defense and the Fourteenth Amendment's due process and equal protection guarantees. The requested declaratory relief would resolve the "actual controversy" between the parties by conclusively establishing Plaintiff's rights and Defendant's obligations going forward, thus preventing further confusion or dispute over the law's enforceability.

56. Declaratory relief is especially appropriate here to the extent it eliminates the need for federal oversight once the Court declares the parties' legal relations. In Steffel v. Thompson, 415 U.S. 452 (1974), the Supreme Court noted that declaratory relief can be an alternative to injunctive relief in resolving federal constitutional claims, particularly where ongoing state proceedings are concerned, since a declaratory judgment alone can terminate the controversy without directly

enjoining state officials. Here, Plaintiff seeks both forms of relief – declaratory and injunctive – to ensure full protection of his rights. A declaration of unconstitutionality will be binding on the defendant as a state official (and the court) regarding Article 39.14(d).

## X.    PRAYER

**57. WHEREFORE**, For the reasons set forth here in, Plaintiff prays that this Court enter judgment in his favor and grant the following relief:

a.    A declaratory judgment that Texas Code of Criminal Procedure Article 39.14(d) (and 39.14(f) to the extent it applies to pro se litigants) is unconstitutional on its face and as applied to Plaintiff, for violating the Sixth Amendment (in conjunction with the First and Fourteenth Amendments) and the Fourteenth Amendment's Due Process and Equal Protection Clauses.

b.    A temporary restraining order, preliminary injunction, and permanent injunction preventing Defendant and all those under his direction from enforcing Article 39.14(d) (and 39.14(f) to the extent it applies to pro se litigants) to deny Plaintiff discovery materials. This includes an order requiring Defendant to provide and allow Plaintiff effective use of all redacted discovery (with any sensitive data redacted as per standard practice) and allowing Plaintiff to use such discovery (and/or up to including redacted copies) in his defense.

c.    Such other and further relief as the Court deems just and proper and for all the other relief to which the plaintiff is entitled.

Respectfully submitted,

_____

///////////////////////////////////////////

**Shawn Olali**
2346 Silver Trace Lane
Allen TX 75013
(214) 425-1173
The Plaintiff

Date: February 3rd, 2026

## VERIFICATION

I, Shawn Olali, am the Defendant in this cause. I have read the foregoing Complaint and state under oath that the factual allegations in the Complaint are true and correct to the best of my knowledge and belief.

_____
Shawn Olali

SUBSCRIBED AND SWORN TO BEFORE ME on this _3rd_ day of February, 20 _26_

_____
[Notary Public, State of Texas [Notary's signature.]

[Notary's seal must be included.]



CHRIS ZI
Notary ID #135540429
My Commission Expires
November 17, 2029

CHRIS ZI
Notary ID #135540429
My Commission Expires
November 17, 2029

## <u>CERTIFICATE OF SERVICE</u>

I, the plaintiff, do hereby certify that, on February 3rd, 2026, did cause and initiate service on the defendant, Paul Johnson in Official Capacity as District Attorney, pursuant to Federal Rules of Civil Procedure regarding service of a complaint via summons on the defendant by Process Server as appropriate.

Principal Office Location:

Paul Johnson
Denton County District Attorney
1450 E McKinney Street
Denton, TX 76209-4524
United States of America

/////////////////////////////////////////
**Shawn Olali**
2346 Silver Trace Lane
Allen TX 75013
(214) 425-1173
The Plaintiff

Date: February 3rd, 2026